And we'll hear argument next in Seife v. United States Food and Drug Administration 20-4072. Thank you. Thank you. Thank you. Mr. Carter, whenever you're ready. Hold on one second, actually. Okay. Good morning, your honors. And may it please the court. My name is Jared Carter. I'm here from the Cornell First Amendment Law Clinic on behalf of Appellant Charles Seife. Your honor, at its core, this case boils down, boil it all the way down to one question. What is the interest protected by exemption for FOIA under the FOIA Improvement Act of 2016? And I'll acknowledge that this is also a case in which it's very easy to get lost in what I call the FOIA forest. There's a lot of acronyms, a lot of scientific jargon. But in terms of the facts, here's what's important. Our client, Professor Charles Seife, investigative journalist, did what FOIA is designed to do. He requested information about government decisions regarding an FDA approval process of a drug. And these weren't just any government decisions that he was requesting information about. These were decisions regarding a controversial drug and a highly irregular approval process. An approval process, I'll note, in which one of the FDA's lead reviewers, Dr. Ronald Farkas, worried that the data from the trials had been heavily manipulated. At the outset, your honor, I want to make an important point about this case. And that is that Seife's position, Appellant's position, is entirely consistent with the Supreme Court's holding in FMI, Food Marketing Institute. And this court is not precluded by that decision from determining what the protected interest under Exemption 4 is. By its own terms, FMI... What is the interest? You start off by saying the key question is what is the protected interest? What is the protected interest behind Exemption 4? I think, your honor, consistent with what the Supreme Court said in FMI, we've got to look at all of the words in Exemption 4. We can't is the economic value of intangible property. That intangible property being either trade secrets or commercial and financial information. And where do you get that from? Well, it doesn't say it in the statute. The terms are not defined by statute. And so we look to case law in determining what the meaning of those words are, as well as the dictionary definitions that were in place at the time... Doesn't the statute really focus the mind on principles of confidentiality and proprietary information? Well, no question. Confidentiality is required in order to fit within the bucket of Exemption 4. So you're absolutely right. The first step in the analysis here is, is there confidential information? And FMI defined what the world of confidential information is. FMI says what fits into the bucket. That's step one. Then we need to look at, under the 2016 amendments, whether or not the agency, the FDA in this case, has met its burden of showing reasonably foreseeable harm to the protected interest of the exemption. Mr. Carter, and you defined that as the sort of critical question at the outset. And one of the things that's puzzling me about that is, I'm not even convinced that's the critical question at the outset, right? So the 2016 amendment creates two different next steps. And one is otherwise prohibited by law. Now you cited the McLean case to say, oh no, otherwise prohibited by law means by statute. And in that case, the court did a detailed textual analysis to conclude that in that statute, the Congress had used the term law, rule, and regulation when it meant the whole basket, therefore only using law here meant statute. Is there a similar textual analysis of the applicable statutes here that get you to the same conclusion that otherwise prohibited by law only applies to statutes? Well, I think the reason that law in this case means statute really is twofold. First of all, if you were to read the word law to include regulations of the FDA or any agency, it would essentially allow an agency through regulation to regulate itself outside of what Congress directed. And Congress in the 2016 amendments, these were meant to be independent and meaningful burdens on the agency. So if all the agency has to do is say, well, we're going to define this universe of then that foreseeable harm analysis that Congress directed becomes essentially meaningless. But the foreseeable harm analysis was an alternative to otherwise, right? These are two different prongs and you're trying to fold them together. And that's what I'm struggling with. Well, what I'm saying, Your Honor, is that if the agency through regulation, if the meaning of prohibited by law means regulation, then they can regulate something into that category. Subject to having the congressional authority to do that. Correct. Correct. And that would allow them to essentially by regulation, avoid that independent and meaningful burden foreseeable harm analysis. What I'm struggling with, though, is the same kind of textual analysis that the court relied on McLean, which is the case we laid on. I'm looking at the statute here and in the very next subsection, it refers to things that are specifically exempted from disclosure by statute. And I'm wondering whether that suggests that when Congress means to limit otherwise exempted by a lot of statute, it uses the word statute in this particular construct. So fair point, Your Honor. I think that what I would say in response to that is that the 2016 amendments, it was a different Congress. And so I think that same logic doesn't carry as much weight. It was a different Congress, used a slightly different word. But I think we come back to that fundamental principle of we can't assume that Congress passed the 2016 amendments to be mere surplusage. They were meant to be independent, meaningful burden. And if an agency by regulation can simply say this is prohibited by law under regulation, then that burden is essentially eliminated. And we think that's not an appropriate way to construe the statute. And in fact, Your Honors, our position is that the appellant's argument is actually more consistent with FMI, because what we do and what we think should be done is harmonizing all of the words in the statute as FMI directed. And when you do that, you find that the words trade secrets, commercial or financial information, based, as I said, on the case law and the dictionary definitions at the time, mean intangible property and economic value. And so the appropriate interest to be considering here is that economic value of intangible property, not confidentiality. As I said, confidentiality is what determines whether we're in the Exemption 4 bucket. And so now the question becomes... When you look at the plain words of Exemption 4, I mean, it talks about trade secrets, confidential commercial or financial information. Why would it be wrong to focus on the confidentiality of the information? Well, I don't think you're wrong, Your Honor. As I said, I think the appropriate analysis is first we determine, is the information... You're saying there has to be a consideration of economic value? Yes. Under that foreseeable harm analysis, that's correct. Does that mean you have to come up with a number? I mean, why... It seems to me if you are looking at whether confidentiality of information is protected, the submitter's economic or business interest, the other two tests are floating out there, why wouldn't those pick up economic value implicitly? Well, I think the problem is if confidentiality is the interest that we're talking about under Exemption 4, it essentially collapses the analysis into one step and it eliminates... You're saying looking at confidentiality by itself is not enough? That's correct. I think that creates a binary. Obviously, if something is confidential and it's disclosed, that it's an on and off switch. And here, Congress passed the FIA amendments in 2016 to add an additional independent burden. So there are, in the insider trading context, for example, bits of information that are available that are proprietary information that don't have for the corporate entity independent value, but that if disclosed to a competitor, for example, might harm the company. Would you concede that that's a possibility in the context of Exemption 4? So we look at competitive harm without reference to the specific value of the information that sought to be disclosed? I think certainly that could be an approach where we look at what is the value, what is the competitive harm value that is impacted by disclosure? And in this instance, the court did in fact... So the government then wouldn't have to go through an assessment of the economic value of the information? Well, I think it would have to. I'm sorry if I misspoke. Yes, it would have to. I think in order to determine what the competitive harms would be, you've got to know what the value of the intangible property is. That's why I started my question by reference to insider trading. So there are bits of information that don't have independent value, economic value, that can be assessed or that's measurable, but that if disclosed would give some competitive advantage to a competitor. Do you agree with that? Yes. Okay. If you agree with that, then there are some cases in the context of Exemption 4 where a information that sought to be disclosed pursuant to a FOIA request doesn't have measurable economic value that a company can point to, but that if it's disclosed would provide a competitive advantage to a competitor. And why isn't that sufficient as an interest that needs to be protected? Well, I think so the way that we would define economic value, it may very well include the competitive harm as part of that disclosure, because that's what gives an intangible property economic value. So I think that's certainly part of the analysis. But in this case, the district court really just looked at the Kelly's evidence at summary judgment and on those points of economic value of competitive harm and entirely ignored Scythe's expert declarance. And so I think that is another grounds that constitutes reversal here, at least so that the district court should consider the evidence put forward by Professor Scythe and his declarance. And I see that I am out of time, Your Honor. If there's no further questions, I would briefly sum up by asking that this court reverse the decision of the district court or in the alternative, reverse and remand in order to consider the evidence that Professor Scythe put forward at summary judgment. Thank you. We'll hear first from the government, I take it? Yes. Good morning. Good morning and may it please the court. My name is Dominika Tarzinska from the United States Attorney's Office for the Southern District of New York on behalf of the United States Food and Drug Administration. It is undisputed that the information here falls within FOIA Exemption 4. It was maintained as confidential by SREPTA and provided to the FDA with the assurance that its confidentiality would be maintained. This case clearly fits within the test of Exemption 4 set forth in the 2016 amendments. So what? So things have changed a little bit, at least. That case did not precede the amendments. It involved a case that arose prior to. I'm sorry. So it didn't. But it didn't have to grapple with the amendment. It did not. But the amendment was in existence at the time that the court issued that decision. In fact, as the same law clinics that represent the plaintiff here argued in their amicus brief in that case, there were only, I believe, six cases at the time that ARGUS was decided that still. OK, my question. So ARGUS leader, however, however you describe it, did not grapple with the 2016 amendment. No, it did not. However, it did provide guidance as to Exemption 4, and it extensively looked at both the legislative history and the language of that provision. And that portion of ARGUS leader is directly applicable here. The court in that case looked at the language of the exemption, which stresses confidentiality. And talks about trade secrets, confidential information. And it also parsed the legislative history and noted that the competitive harm test, the one that it was rejecting, had relied heavily on statements from witnesses at congressional hearings on a different bill that was never enacted into law. And instead, it looked at official committee reports, which were consistent with the plain and ordinary meaning of the statute's terms, which explained that the exemption protects information. Well, sure. But now you have a statute that requires an assessment of foreseeable harm. And that's what's in front of us, correct? So how is foreseeable harm, what does that add? What, if anything more beyond what FMI described, does the 2016 amendment add to the government's language? The language of the 2016 amendments makes clear that what's necessary is that the agency reasonably foresees that the disclosure would harm an interest. It does not change the interest. It does not change the exemption. It does not impose this heavy additional burden that plaintiff seems to suggest that would require. It appears it would require the FDA to conduct some sort of mini trial in which the plaintiff must, in which the submitter must prove that. Economic value. What's that? Economic value. Well, must prove some sort of significant impact here, no matter, significant impact on its competitive status if the information were disclosed. All the language of the 2016 amendment requires is that the agency make a predictive judgment and that that predictive judgment be reasonable. Here it was reasonable for no matter what the interest, whether the court find that the interest is confidentiality, which as the plaintiff notes, would clearly be harmed. The confidential nature of the information, undisputably, would be harmed if it were publicly disclosed. In this case, yes. In this case, or if it were the economic nature of the information. As Judge Furman recognized, SREPTA present, and as Judge Furman recognized, and indeed as the FDA's declarations recognized, the second declaration of Nancy Sager, which is at the record, is in the record at Joint Appendix 2247, she notes that the FDA concluded that it was reasonably foreseeable that public disclosure would harm, one, the confidential nature of the information because it would no longer be public, but two, would cause competitive harm to SREPTA if disclosed by referring back to her first declaration, which she submitted prior to the Supreme Court's decision in FMI versus Argus, which in turn relied on the Estepan declaration, which is her first declaration is at Joint Appendix 2257, and the Estepan declaration is Joint Appendix 141. I'm, one of the things I'm struggling with is the sort of application of Rule 56 in this context. You've sort of emphasized that most of these FOIA cases are resolved on summary judgment. I take it you don't take the position that in the face of a disputed issue of material fact, you wouldn't resolve these on summary judgment, and the question here is whether there's a disputed issue of material fact, or do you contend there's a different standard, sort of unwritten but implicit in FOIA cases? Well, there is a practice that in FOIA cases, the courts generally resolve these cases on summary judgment, and the court can grant summary judgment based on purely on the, if the declarations submitted by the agency sustain its burden. And we've said time and again, and courts have said you can do that, you give them a but it's always qualified by in the absence of contradictory material evidence in the record. And I gather you're asking us to say if there's sufficient basis in the record offered by the folks seeking to invoke the exemption here, that ends the inquiry and you don't have to determine whether there's conflicting evidence also of record that would require resolution by an evidentiary hearing in any other Rule 56 setting. Well, I have two points in response to your question. First, looking at the language of the 2016 amendments, they really talk about the agency reasonably foreseeing the harm. And so if the information is sufficient for the agency to make that determination, that should be sufficient. But second, yes, if there were actually an issue of material fact, then the court could go to an evidentiary hearing. However, despite submitting a mountain of evidence, and it's undisputed there is a mountain of evidence submitted, Mr. Seif, that evidence, for the most part, does not address a material question of fact that the district court needed to decide. It primarily addresses the public interest of disclosure, analyzes the FDA's approval process, But aren't there some fairly direct statements that, if the test requires some sort of showing of competitive or economic harm, and I realize that's sort of a threshold legal issue. If it does, isn't there contrary evidence in the record as to whether really the disclosure of these additional things is reasonably foreseeably likely to give rise to the kind of economic or competitive harm that that would require? Respectfully, Your Honor, the evidence submitted by Mr. Seif, declarations from experts who have not personally viewed the information, while they speculate as to consequences, it does not directly address the points of harm reflected in Mr. Estepan's declaration. So, for example, on the dosing information, this is information about doses that were considered by Sarepta and ultimately not utilized. They make the argument, well, they're different drugs. Those are different drugs. How could there be any competitive harm? But the point is that disclosing the approaches that Sarepta considered but did not adopt provides a shortcut to its competitors. It allows them to bypass certain things that didn't work, and it provides a competitive advantage. All of these little pieces of information coming together. And as I understand it on this record, Mr. Seif or Professor Seif didn't really grapple with the competitive advantage rationale. He put all of his eggs in the measurable economic value basket. Is that correct? Well, there is. So initially, Professor Seif did submit declarations when the test was pre-Argus test. So there was an attempt to argue competitive harm. In the briefing that was in the submissions that were prior to that Supreme Court decision. However, those points do not actually... So there are attempts to argue that, but the points made do not actually undermine the evidence submitted by Sarepta's declarant, which were reviewed and relied upon by the FDA. And so as I started, even if the court were to conclude there is some economic harm, competitive harm that the 2016 amendments add to the test, it is not this full-blown evidentiary hearing that the agency should have engaged in and certainly that then the court did not need to engage in because the evidence submitted shows sufficient harm. It doesn't need to be harm arising to any sort of significant level. It is just... What is the rule that you're asking of us? What is the post-2016 amendment rule that you're asking us to announce in connection with this case? What we're asking is that the court affirm Judge Furman's decision. No, that's a decretal. That's a decretal. How do we get to that decretal language? In other words, what do you want us to say about the interests and also what it is that the government needs to show? Competitive harm? Are you asking purely for a confidentiality analysis? In the first instance, we're arguing that in this case, disclosure is prohibited by law, by the FDA regulations. So the court need not even reach the issue of what the protected interest is. Can you respond to the... I'm sorry to interrupt, but can you just put a flag to come back and tell us why the McLean case isn't an answer to that argument? Well, as Your Honor noted, the McLean case was looked at the whistleblower protections of 5 USC 2302. And then it noted that in the specific instance of that statute, where as Your Honor noted, there is the use of law, rule, or regulation throughout the statute. The use of law alone was intended to have a different meaning. And the court found that because of this distinction, this was a clear case that it distinguished from Chrysler Corp versus Brown, which is what Judge Furman relied upon. And that distinction was the clear showing that law does not include regulations. As Your Honor noted, that is not the case with respect to FOIA. 5 USC 552 in 8A uses... In the foreseeable harm... In the 2016 amendments uses law, but later on in exemption three uses disclosure by statute. Clearly those are McLean to argue FOIA and Section 2302B8A, which were the whistleblower protections, are different statutes. They have different language, different histories, and were enacted in different contexts. Our interpretation of one, therefore, has no impact whatsoever on our interpretation of the other. Thank you. And I'm sorry, you were in the process of... I rudely interrupted answering Judge Leigh's question about the... No, no, no. That was actually a keep answering my question, which is what else is there in terms of... If we disagree with you on the prohibited by law prong, what is your response? Our response is under either test, whether the court follow the district courts that... Just like Judge Furman, who said that under either test, the withholding was appropriate here and the government had met its burden. Whether the interest is confidentiality, which is what the plain language of competitive harm, under either of those... So that's what the government would suggest we do. I mean, obviously your first is prohibited by law, second confidentiality, but you also think that a competitive harm analysis is consonant with the 2016 amendment. Is that correct? It... That is really the question. Frankly, your honor, the reapplying the competitive harm test after the Supreme Court's decision in August seems inconsistent with the directive of the Supreme Court, given how it has interpreted... Inconsistent with the directive of the Supreme Court that did not, you acknowledge, grapple with the 2016 amendment. I don't know that we would be here if we didn't have the 2016 amendment, but that... Some people say that that was a watershed amendment. Some others say no, but that's what we're grappling with. What is this additional... Congress doesn't say things without meaning it, and it means what it says. So what is this additional, reasonable, foreseeable harm requirement? It requires the agency to take a look at whether disclosure would... And conclude that there is... That it's foreseeable that harm would result. It doesn't require this heightened evidentiary analysis. It just requires there to be sufficient information before the agency to reach that conclusion, and for that conclusion to be reasonable. And what kind of harm? What... I mean, that's... You've offered these two different tests. I don't hear... Is the agency taking a position as to which test we should adopt, or just simply stopping at, we went under either? It is our position that we went under either. We are not taking a position as to which one. Okay. Thank you. We'll hear rebuttal. I believe Sir... Oh, I'm sorry. Sir Reptis Council. My apologies. Good morning, Your Honors. Kristin Ittig, Arnold and Porter K. Scholler for Serapta Therapeutics. Thank you for hearing us this morning. Your Honors, you asked what the test is that you should apply, and the test is the test, really, that was set forth in Argus. Is information as confidential for these purposes, at least where it is both customarily and actually treated as private by its owner and provided to the agency under the assurance of privacy?  The 2016 amendment really didn't add anything. It was just a procedural addition that the government then has to make an assessment of the harm, however harm is defined, and I'd be interested in hearing what you think harm means. You read my mind on that, Your Honor, because that's where I was going next. You asked in the previous questioning whether the 2016 amendments were a watershed moment, and they were not a watershed moment. The 2016 amendments were just the codification of what DOJ's existing practice had been, which was to only withhold information where the agency reasonably foresaw harm or where disclosure was prohibited by law. We agreed with the FDA that- In other words, even assuming the requirements were met, if there was no harm, they would go ahead and disclose the documents. Is that the policy? Practice at the time that the amendments were passed, yes. And that went to their DOJ FOIA guide, which explained when they would and would not withhold information. Interestingly, Your Honors, the 2016 amendments were really about the concern about the overuse of Exemption 5. They were not about Exemption 4. And so a text that's added through the FOIA Amendment, FOIA Improvement Act, the Section 8A, doesn't really neatly square with all nine FOIA amendments. But we are where we are. And it squares nicely with some of them, but it doesn't with Exemption 4. Exemption 4, though, really all that that requires is that information's trade secret, commercial financial information, and that it's obtained from a person. So that means it's from outside of the government. We're not talking about the government's information here. We're talking about from outside the government. And that information is privileged or confidential. Confidentiality is the interest that is being protected here. So when we talk about do we need to look at what the interest is protected by Exemption 4, that interest is confidentiality. And although the Argus decision didn't grapple with the FOIA Amendment of 2016, what the Supreme Court did tell us in Argus was when there's a question, look at the statute. Look at the of the FOIA Improvement Act portion of FOIA. It says that if the agency reasonably foresees that disclosure would harm an interest. What's the interest? The interest is confidentiality. If we add anything else on top of that, we're adding a gloss that is not part of the statute, and that is not the role of this litigation. Well, the Supreme Court in FMI described the interest. It says interests that may include providing private parties with sufficient assurances about the treatment of their and basically may include confidentiality, which suggests that it may include other interests. Yes, Your Honor. Here the information certainly is the confidentiality, but I agree there could be other interests that would be protected as well. Here there's no dispute but that the information is confidential. SREPTA has held the information as confidential. The government provided assurances through its regulations that it would treat that information as confidential, and SREPTA has maintained it as such. So as to Exemption 4, if I'm understanding your position, it's that the 2016 amendments really didn't create an independent and meaningful additional substantive showing or step relative to disclosure. That might be true for other exemptions, but your view is Exemption 4, the law didn't change in any meaningful way as a result of those amendments. Right. There is still an independent and meaningful step that the agency has to take. It's required to take that, but in finding the information to be confidential, that step is taken. A procedural step? Yes. Okay. Yes. Is there any harm? Let me just get an understanding of this from you as a company in requiring something somewhat more substantive by way of a competitive harm analysis. Your Honor, the company has demonstrated competitive harm here. I appreciate that that's your argument, but is there any harm to that? Is there any harm to requiring harm? Correct. The agency has to reasonably foresee that there would be harm to confidentiality, and that step is not a problem, but defining it as a diminution in economic value, there is harm in that because that's not what the statute calls for, and it's not what the regulations call for. I distinguish, and maybe I'm wrong about this, between a competitive harm analysis, and you heard my questions relating to insider trading cases, but I distinguish between a competitive harm analysis and what your friend, Mr. Carter, is advancing, which is this diminution in economic value. Two very different things. I want you to focus on the competitive harm, which could also be viewed as a competitive advantage to competitors. Right. The interest that is protected by the statute is in the confidentiality, and part of that, Your Honor, yes, there is competitive value to the information. It's the reason that the companies spend so much time and effort to keep it confidential, that they have nondisclosure agreements, that they insist that it not be disseminated to all employees that they otherwise protect it. So there is an economic value without any doubt, but there's not a requirement in the statute that we look at that economic value. Anything further? No. Thank you very much. Now we'll hear from Mr. Carter. Thank you. Thank you, Your Honors. Just very briefly, a couple of key points. First of all, Your Honors, things have changed since FMI. Congress added an independent and meaningful burden, and if we take a Pelley's position to its logical conclusion, it essentially eviscerates that- Is it something more than a, I mean, there clearly is at least a procedural change in the agency has to make this finding. Does it change the requirements of exemption for it in a substantive way? I think it requires looking at that protected interest, and so I think it does. I think it's got to be more than procedural in order to be independent and meaningful. Second point, appellant is not- I'm still struggling with what the difference is. The difference is there has to an economic consideration explicitly? Is that the point? That's correct, Your Honor. We think that's what the text of the statute, when you take all of the words and harmonize them as FMI itself and other cases directed, that's what we- Wouldn't that have been there before, looking at the words of the statute, that there was implicitly an economic component? Correct. Yes, I think under exemption for it- So that's not added by the 2016 amendments? But the 2016 amendments require looking at the harm to those interests, and so I think that is an independent and meaningful difference, and that's why Congress passed the statute. I'd also note on this point just briefly that the 2016 amendments nowhere limit their applicability to just one exemption or the other. So I think while we can- I think that was more or less conceded, but it was just a point. Fair enough. And then third, Your Honors, the appellant's position is not that the FDA has to have some sort of mini-trial. The summary judgment standard on these cases is very clear, and it indicates that summary judgment is not appropriate, and this is from this court, the Grand Central Partnership case. Summary judgment is not appropriate if there is contradictory evidence in the record. And here, our position is that the record is full of contradictory evidence. And so I think that's a very, very important point at the summary judgment standard. Whether that evidence is material, does that depend in part on which standard we adopt? In other words, if we agreed that the interest protected is sort of the confidentiality itself and there's not a whole lot of new, it strikes me that a lot of the evidence that you might be relying on involves the impact on competitive harm, economic interests, and the like. Does the evidentiary issue fall away if you lose on that legal standard? Well, I think our position would be that even if this court were to find confidentiality is the protected interest, there still has to be a meaningful analysis of foreseeable harm. But I take your point. Yes, I think if- of course, the contradictory evidence depends on what the material questions of fact are. Depends on your theory of the case, right? Correct. Okay. Correct. And finally, Your Honor, I would just posit, I know the court was interested in what should the test be that it applies? And I think our test is simple, straightforward, and harmonizes the 2016 amendments. And it's essentially this, that the agency must reasonably foresee harm to economic value of this confidential intangible property. So you have the confidentiality requirement, no doubt. FMI says that very clearly. That's what puts it in the bucket of Exemption 4. But they have to, they have to reasonably foresee and they have to demonstrate and meet that burden. And they just haven't done it at summary judgment, Your Honor. The evidence is very clearly full of contradictory positions on this point. And for all of those reasons, we respectfully request this court reverse the decision of the district court. Thank you very much. Thank you. We'll reverse our decision and we'll hear argument.